043 - FTFL                    **FIFTH THIRD BANK**

## Draw Note

NOTICE TO TAX EXAMINER: DOCUMENTARY STAMP TAX IN THE AMOUNT OF $350.00 HAS BEEN OR WILL BE PAID TO THE FLORIDA DEPARTMENT OF REVENUE. CERTIFICATE OF REGISTRATION NO. 78-8015192945-9.

OFFICER No. 43126                                                                                       NOTE No. ▇▇▇▇▇▇▇▇
$100,000.00                                                                                                  August 23, 2019
                                                                                                              (Effective Date)

    1.    **PROMISE TO PAY.** On or before August 23, 2025 (the "Maturity Date"), the undersigned, Agritrade Farms, LLC, a Florida limited liability company located at 1100 South Powerline Road Suite 215, Deerfield Beach, Broward County, Florida 33442 ("Borrower") for value received, hereby promises to pay to the order of Fifth Third Bank, an Ohio banking corporation located at 999 Vanderbilt Beach Road, Naples, Collier County, Florida 34108 for itself and as agent for any affiliate of Fifth Third Bancorp (together with its successors and assigns, the "Lender") the sum of One Hundred Thousand and 00/100 Dollars ($100,000.00) (the "Borrowing"), plus interest as provided herein, less such amounts as shall have been repaid in accordance with this Note. The outstanding balance of this Note shall appear on a supplemental bank record and is not necessarily the face amount of this Note, which record shall evidence the balance due pursuant to this Note at any time.

Principal and interest payments shall be initiated by Lender in accordance with the terms of this Note from Borrower's account through Auto BillPayer. Borrower hereby authorizes Lender to initiate such payments from Borrower's account located at Fifth Third Bank, routing number ▇▇▇▇▇▇ account number ▇▇▇▇▇▇. Borrower acknowledges and agrees that use of Auto BillPayer shall be governed by the Auto BillPayer Terms and Conditions, a copy of which Borrower acknowledges receipt. Borrower further acknowledges and agrees to maintain payments hereunder through Auto BillPayer throughout the term of this Note. Each payment hereunder may be applied in the following order: accrued interest, principal, fees, charges and advanced costs.

Lender, in its reasonable discretion, may loan hereunder to Borrower such amounts as may from time to time be requested by Borrower until August 23, 2020 (the "Conversion Date") provided that (a) the aggregate principal amount borrowed hereunder shall not at any time exceed the Borrowing, (b) no Event of Default, as defined herein, shall exist or be caused thereby, and (c) amounts advanced and repaid may not be re-borrowed hereunder. On the Conversion Date, provided no Event of Default has occurred, the entire outstanding principal balance and all accrued and unpaid interest shall be converted to a term loan ("Conversion Loan").

The unpaid principal balance of the Conversion Loan shall accrue interest at a rate per annum equal to 5.29%.

The unpaid principal balance of the Conversion Loan shall be due and payable in consecutive monthly installments of principal and interest, each in an amount necessary to amortize the outstanding principal balance on the Conversion Date over a period of 60 months. In addition to, and without limiting, any other provisions contained in this Note, the entire principal balance, together with all accrued and unpaid interest and any other charges, advances and fees, if any, outstanding hereunder shall be due and payable in full on the earlier of the Maturity Date or upon acceleration of this Note. Accrued but unpaid interest shall be payable on the 23rd day of each month beginning on September 23, 2020.

The principal sum outstanding during the draw period of this Note shall bear interest at a floating rate per annum equal to 1.25% plus the rate of interest per annum established from time to time by Fifth Third Bank at its principal office as its "Prime Rate", whether or not Fifth Third Bank shall at times lend to borrowers at lower rates of interest or, if there is no such Prime Rate, then such other rate as may be substituted by Fifth Third Bank for such Prime Rate. Each determination by Lender of the Prime Rate shall be binding and conclusive in the absence of manifest error. In the event of a change in said Prime Rate, the interest rate shall be changed immediately to 1.25% plus such new Prime Rate. Interest shall be calculated based on a 360-day year and charged for the actual number of days elapsed, and shall be payable on the 23rd day of each calendar month beginning on September 23, 2019.

Notwithstanding any provision to the contrary in this Note, in no event shall the interest rate charged on the Borrowing exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the principal sum outstanding and any other sums (other than interest) due and payable to Lender under this Note, and the provisions hereof shall be deemed amended to provide for the highest rate of interest permitted under applicable law.

2. **USE OF PROCEEDS.** Borrower certifies that the proceeds of this loan are to be used for business purposes.

3. **NOTE PROCESSING FEE.** Lender may charge, and Borrower agrees to pay on the above Effective Date, a note processing fee in the amount of $300.00.

4. **TAX INDEMNIFICATION.** If at any time the State of Florida shall determine that the intangible tax or documentary stamp tax paid in connection with this Note or any document executed in connection therewith, is insufficient for any reason whatsoever and that any additional intangible tax or documentary stamp tax should be paid, then the Borrower shall pay the same upon such determination together with all interest and/or penalties imposed in connection therewith. The Borrower hereby agrees to indemnify, defend and hold Lender harmless therefrom. If any such sums are advanced by Lender, they shall be due and payable on demand and shall bear interest at the Default Rate until paid.

5. **TAX RETURNS AND FINANCIAL INFORMATION.** Within 30 days of filing, Borrower shall provide Lender with copies of all federal, state and local income tax returns. Within 15 days of the request of Lender, Borrower shall provide to Lender such financial information and financial statements as Lender may reasonably request.

6. **DEPOSITORY/BANKING SERVICES.** Lender shall be the principal depository in which substantially all of Borrower's funds are deposited, and the principal bank of account of Borrower, as long as any Obligations are outstanding, and Borrower shall grant Lender the first and last opportunity to provide any corporate banking services required by Borrower and its affiliates.

7. **COSTS.** Borrower shall reimburse Lender for any and all fees, costs and expenses including, without limitation, reasonable attorneys' fees, and paralegal fees incurred in connection with litigation, mediation, arbitration, other alternate dispute processes, administrative proceedings and appeals of all of the same, other professionals' fees, appraisal fees, environmental assessment fees (including Phase I and Phase II assessments), field exam audits, expert fees, court costs, litigation, documentary stamp taxes, if any, intangible taxes, if any, and other expenses (collectively, the "Costs") incurred or paid by Lender or any of its officers, employees or agents in connection with: (a) the preparation, negotiation, procurement, review, administration or enforcement of the Loan Documents or any instrument, agreement, document, policy, consent, waiver, subordination, release of lien, termination statement, satisfaction of mortgage, financing statement or other lien search, recording or filing related thereto (or any amendment, modification or extension to, or any replacement or substitution for, any of the foregoing), whether or not any particular portion of the transactions contemplated during such negotiations is ultimately consummated, and (b) the defense, preservation and protection of Lender's rights and remedies thereunder, including without limitation, its security interest in the Collateral or any other property pledged to secure the Loans, whether incurred in bankruptcy, insolvency, foreclosure or other litigation or proceedings or otherwise. The Costs shall be due and payable upon demand by Lender. If Borrower fails to pay the Costs when upon such demand, Lender is entitled to disburse such sums as Obligations. Thereafter, the Costs shall bear interest from the date incurred or disbursed at the highest rate set forth in this Note. This provision shall survive the termination of this Note and the other Loan Documents and/or the repayment of any amounts due or the performance of any Obligation.

8. **DEFINITIONS.** Certain capitalized terms have the meanings set forth on any exhibit hereto, in the Security Agreement, if applicable, or any other Loan Document. All financial terms used herein but not defined on the exhibits, in the Security Agreement, if applicable, or any other Loan Document have the meanings given to them by generally accepted accounting principles. All other undefined terms have the meanings given to them in the Uniform Commercial Code as adopted in the state whose law governs this instrument. The following definitions are used herein:

(a) "Business Day" means any day on which commercial banks in Cincinnati, Ohio are required by law to be open for business; *provided* that, notwithstanding anything to the contrary in this definition of "Business Day", at any time during which a Rate Management Agreement with Lender is then in effect with respect to all or a portion of this Note, then the definitions of "Business Day" and "Banking Day", as applicable, pursuant to such Rate Management Agreement shall govern with respect to all applicable notices and determinations in connection with such portion of this Note subject to such Rate Management Agreement. Periods of days referred to in this Note will be counted in calendar days unless Business Days are expressly prescribed.

(b) "Lien" means any security interest, mortgage, pledge, assignment, lien or other encumbrance of any kind, including interests of vendors or lessors under conditional sale contracts or capital leases.



(c) "Obligation(s)" means all loans, advances, indebtedness and each and every other obligation or liability of Borrower owed to each of Lender and/or any affiliate of Fifth Third Bancorp, however created, of every kind and description whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease overdraft, agreement or otherwise, whether or not secured by additional collateral, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every obligation or liability arising under the loan document, any and all Rate Management Obligations, letters of credit now or hereafter issued by Lender or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, and agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications and restatements thereof, and all expenses and attorneys' fees incurred by Lender hereunder or any other document, instrument or agreement related to any of the foregoing; provided, however, that, with respect to any guarantor (solely in such guarantor's capacity as a guarantor thereof and not as a direct obligor, if applicable) the Obligations shall not include any Excluded Swap Obligations in respect of such guarantor.

(d) "Collateral" means all personal and/or real property provided by Borrower to Lender as collateral security for the obligations.

(e) "Rate Management Agreement" means any agreement, device or arrangement providing for payments which are related to fluctuations of interest rates, exchange rates, forward rates, commodities, or equity prices, including, without limitation, any transaction, device, agreement or arrangement (i) that is or is the functional equivalent of a rate swap transaction, swap option, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor transaction, collar transaction, currency swap transaction, cross-currency rate swap transaction, currency option, credit protection transaction, credit swap, credit default swap, credit default option, total return swap, credit spread transaction, repurchase transaction, reverse repurchase transaction, buy/sell-back transaction, securities lending transaction, weather index transaction or forward purchase or sale of a security, commodity or other financial instrument or interest (including any option with respect to any of these transactions) or (ii) which is a type of transaction that is similar to any transaction referred to in clause (i) above that is currently, or in the future becomes, recurrently entered into in the financial markets (including terms and conditions incorporated by reference in such agreement) and which is a forward, swap, future, option or other derivative on one or more rates, currencies, commodities, equity securities or other equity instruments, debt securities or other debt instruments, economic indices or measures of economic risk or value, or other benchmarks against which payments or deliveries are to be made, or any combination of these transactions, which transactions may be evidenced by an ISDA Master Agreement between Borrower and Lender or any affiliate of Fifth Third Bancorp, and any schedules, confirmations and documents and other confirming evidence between the parties confirming transactions thereunder, all whether now existing or hereafter arising, and in each case as amended, modified or supplemented from time to time.

(f) "Rate Management Obligations" means any and all obligations of Borrower to Lender or any affiliate of Fifth Third Bancorp, whether absolute, contingent or otherwise and howsoever and whensoever (whether now or hereafter) created, arising, evidenced or acquired (including all renewals, extensions and modifications thereof and substitutions therefore), under or in connection with (i) any and all Rate Management Agreements, and (ii) any and all cancellations, buy backs, reversals, terminations or assignments of any Rate Management Agreement.

(g) "Commodity Exchange Act" means the Commodity Exchange Act (7 U.S.C. § 1 et seq.), as amended from time to time, and any successor statute.

(h) "Excluded Swap Obligation" means, with respect to any guarantor of a Swap Obligation, including the grant of a security interest to secure the guaranty of such Swap Obligation, any Swap Obligation if, and to the extent that, such Swap Obligation is or becomes illegal under the Commodity Exchange Act or any rule, regulation or order of the Commodity Futures Trading Commission (or the application or official interpretation of any thereof) by virtue of such guarantor's failure for any reason to constitute an "eligible contract participant" as defined in the Commodity Exchange Act and the regulations thereunder at the time the guaranty or grant of such security interest becomes effective with respect to such Swap Obligation. If a Swap Obligation arises under a master agreement governing more than one swap, such exclusion shall apply only to the portion of such Swap Obligation that is attributable to swaps for which such Swap Obligation or security interest is or becomes illegal.



(i)     "Swap Obligation" means any Rate Management Obligation that constitutes a "swap" within the meaning of section 1a(47) of the Commodity Exchange Act, as amended from time to time.

9.     EVENTS OF DEFAULT. Upon the occurrence of any of the following events (each, an "Event of Default"), Lender may, at its option, without any demand or notice whatsoever, cease making advances and declare this Note and all Obligations to be fully due and payable in their aggregate amount, together with accrued interest and all prepayment premiums, fees, and charges applicable thereto:

(a)     Any failure to make any payment when due of principal or accrued interest on this Note or any other Obligation and such nonpayment remains uncured for 10 days after written notice from Lender to Borrower of such default.

(b)     Any representation or warranty of Borrower set forth in this Note or in any agreement, instrument, document, certificate or financial statement evidencing, guarantying, securing or otherwise related to, this Note or any other Obligation shall be materially inaccurate or misleading.

(c)     Borrower or any Guarantor shall fail to observe or perform any other term or condition of this Note or any other term or condition set forth in any agreement, instrument, document, certificate, or financial statement evidencing, guarantying, or otherwise related to this Note or any other Obligation, or Borrower or any Guarantor shall otherwise default in the observance or performance of any covenant or agreement set forth in any of the foregoing for 30 days after written notice from Lender to Borrower of such default.

(d)     The dissolution of Borrower or of any endorser or guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing.

(e)     The creation of any lien (except a lien to Lender) on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any endorser or guarantor hereof including, without limitation, any property deposited with Lender.

(f)     In the reasonable judgment of Lender in good faith, any material adverse change occurs in the existing or prospective financial condition of Borrower that may affect the ability of Borrower to repay the Obligations, or the Lender deems itself insecure.

(g)     A commencement by the Borrower of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of the Borrower in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Borrower, or for any substantial part of the property of Borrower, or ordering the wind-up or liquidation of the affairs of Borrower; or the filing and pendency for 30 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Borrower of any general assignment for the benefit of creditors; or the failure of the Borrower of the Obligations generally to pay its debts as such debts become due; or the taking of action by the Borrower in furtherance of any of the foregoing.

(h)     Nonpayment by the Borrower of any Rate Management Obligation relating to this Note when due or the breach by the Borrower of any term, provision or condition contained in any Rate Management Agreement.

10.     REMEDIES. After the occurrence of an Event of Default, in addition to any other remedy permitted by law, Lender may at any time, without notice, apply the collateral to this Note or such other Obligations, whether due or not, and Lender may, at its option, proceed to enforce and protect its rights by an action at law or in equity or by any other appropriate proceedings; provided that this Note and the Obligations shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order. No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver. No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy. No waiver or indulgence by



Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence in the future.

11. **LATE PAYMENTS; DEFAULT RATE; FEES.** If any payment is not paid when due (whether by acceleration or otherwise) or within 10 days thereafter, undersigned agrees to pay to Lender a late payment fee as provided for in any loan agreement or 5% of the payment amount, whichever is greater with a minimum fee of $20.00. After an Event of Default, Borrower agrees to pay to Lender a fixed charge of $25.00, or Borrower agrees that Lender may, without notice, increase the interest rate charged hereunder by five percentage points (5%) (the "Default Rate"), whichever is greater. Lender may impose a non-sufficient funds fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender.

12. **PREPAYMENT.** Borrower may prepay all or part of this Note, which prepaid amounts shall be applied to the amounts due in reverse order of their due dates. Upon any such prepayment after the Conversion Date, including involuntary prepayment by acceleration, Borrower shall pay, to Lender a premium of 1.0% of the amount of such principal prepayment.

13. **ENTIRE AGREEMENT.** Borrower agrees that there are no conditions or understandings which are not expressed in this Note and the documents referred to herein.

14. **SEVERABILITY.** The declaration of invalidity of any provision of this Note shall not affect any part of the remainder of the provisions.

15. **ASSIGNMENT.** Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender. Borrower agrees that Lender may assign some or all of its rights and remedies described in this Note without notice to, or prior consent from, the Borrower.

16. **MODIFICATION; WAIVER OF LENDER.** The modification or waiver of any of Borrower's obligations or Lender's rights under this Note must be contained in a writing signed by Lender. Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion. Borrower's obligations under this Note shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co- borrower, endorser or guarantor or (ii) any of its rights against any co- borrower, guarantor or endorser.

17. **WAIVER OF BORROWER.** Demand, presentment, protest and notice of dishonor, notice of protest and notice of default are hereby waived by Borrower, and any endorser or guarantor hereof. Each of Borrower, including but not limited to all co-makers and accommodation makers of this Note, hereby waives all suretyship defenses including but not limited to all defenses based upon impairment of collateral and all suretyship defenses described in Section 3-605 of the Uniform Commercial Code (the "UCC"). Such waiver is entered to the full extent permitted by Section 3-605 (i) of the UCC.

18. **GOVERNING LAW; CONSENT TO JURISDICTION.** This Note is delivered in, is intended to be performed in, will be governed, construed, and enforceable in accordance with and governed by the internal laws of, the State of Florida, without regard to principles of conflicts of law. Borrower agrees that the state and federal courts in the County where the Lender is located shall have exclusive jurisdiction over all matters arising out of this Note, and that service of process in any such proceeding shall be effective if mailed to Borrower at the address set forth herein.

19. **JURY WAIVER.** BORROWER, AND ANY ENDORSER OR GUARANTOR HEREOF, WAIVE THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.



BORROWER:

Agritrade Farms, LLC, a Florida limited liability company

By: _____
(Authorized Signer)

Ayal Raz, Sole Member
(Print Name and Title)